## Chamberlin et al. *v.* Hartley et al., Appellants.

*Elections—School directors—Defective ballots.*

In an election for school directors, six directors were to be chosen, two for a term of three years, two for two years, and two for one year. The ballots of the six persons having a majority of all the votes cast, failed to designate the term, but the six persons having a minority of all the votes cast had a majority of all the votes on which the term was designated. *Held*, that the latter six persons were duly elected.

*Evidence—Caucus agreement—Act of April 11, 1862.*

In such a case it was incompetent to show that at the party caucus at which the first six persons were nominated, it was agreed that the persons receiving the highest number of all the votes should have the three years term, the persons receiving the next highest number should have the two years term, and the persons receiving the next highest number should have the one year term.

The act of April 11, 1862, P. L. 471, does not apply to such a case, because that act was operative only when the " voters shall *all* neglect to designate on their tickets the term of office for which each person voted for is a candidate."

Argued Oct. 12, 1892. Appeal, No. 244, Oct. T., 1892, by S. C. Hartley et al., from order of Q. S. Somerset Co., Oct. T., 1892, No. 244, declaring A. F. John et al. elected school directors of Meyersdale borough. Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Heydrick, JJ.

Election petition by Chamberlin et al., qualified voters.

The facts appear by the opinion of the court below, as follows, by Longenecker, P. J.:

" In 1891, the court, upon the petition of citizens of said borough, removed the members of the school board and appointed a full board to succeed them until their successors to be chosen had been duly qualified.

" On the 16th of February, 1892, therefore, six directors were to be elected to fill the regular term and vacancies so occasioned, viz.: two for the term of three years, two for two years and two for one year. Many of the voters failed to designate upon their ballots the term which they desired the candidates of their choice should respectively fill ; whilst others named the term as well as the candidate.

" The election certificates, or returns, show that S. C. Hartley had 183 votes, Wm. Appel had 185 votes, Geo. W. Collins had 205 votes, S. S. Good had 180 votes, W. H. Habel had 177 votes, B. D. Morgan had 210 votes; Kennedy Price and Wm. Rupp, for three years term, had 171 and 119 votes respectively; A. F. John and J. W. Young, for two years term, had 163 and 110 votes respectively, and J. F. Anthony and H. J. Ebbecka, for one year term had 145 and 133 votes respectively.

" Of the ballots cast for Hartley, 165, of those for Appel, 175, of those for Collins, 193, of those for Good, 158, of those for Habel, 170, and of those for Morgan, 189, had no designation of the term upon them or anything from which it could be inferred how long the voters intended they should serve.

" A majority of the election officers did not undertake to pass upon the question raised by the failure to designate the term, but, after computing the votes returned those receiving the highest number of votes, viz.: Hartley, Appel, Collins, Good, Habel and Morgan as having been elected. One of the inspectors did not sign the certificate.

" In due time a petition of the required number of qualified electors of the school district was presented to the court contesting the election on the ground that the certificate, or return, was ' undue, illegal and incorrect,' because the votes cast for Hartley, Appel, Collins, Good, Habel and Morgan were illegally cast and should not have been counted, and the election officers should have declared Kennedy Price and Wm. Rupp elected school directors for three years, A. F. John and J. W. Young for two years and J. F. Anthony and H. J. Ebbecka for one year.

" The ground mainly relied upon by the contestants was the failure of nearly all of the supporters of the contestees to indicate upon their ballots the term of office; but it was also alleged that a few persons who voted for them were not properly qualified electors. As we regard the case upon the election return and the evidence taken by the commissioners it is not necessary to consider the alleged illegal vote; whether the ballots with nothing upon them to indicate the length of term should have been counted for contestees is the controlling question in the case.

" Judge COOLEY in his principles of Constitutional Law, page

253, says: ' In elections by ballot the voter must take care that his ballot shall be complete in itself, so that it shall express his intention without resort to extraneous evidence for explanation of apparent ambiguities. The general rules of law do not permit a written instrument to be varied or added to by parol; and in case of ballots the parol evidence would be especially objectionable and dangerous, since public interests of the highest importance depend upon the election, and the inducements to corruption and perjury would sometimes be enormous.'

" The same author in his work on Constitutional Limitations, page 611, says : ' We think evidence of such facts as may be called the circumstances surrounding the election, such as who were the candidates brought forward by the nominating conventions; whether other persons of the same name reside in the district . . . . and, if so, whether they were eligible or had been named for the office; if the ballot was printed imperfectly, how it came to be so printed, and the like, is admissible for the purpose of showing that the imperfect ballot was meant for a particular candidate, unless the name is so different that to thus apply it would be to contradict the ballot itself; *or unless the ballot is so defective* that it fails to show any intention whatever, in which case it is not admissible.' These extracts sum up the rulings of numerous courts in Pennsylvania and elsewhere. It must be observed, however, that the extraneous evidence which may be resorted to must relate to what appears upon the ballot for the purpose of arriving at the intention of the voter at the time of depositing it.

" In the case at bar it is not pretended that the voters who neglected to specify upon their ballots the several terms of the candidates of their choice desired to do so.

" On the contrary the proof before the commissioner is to the effect that on the evening preceding the election, at the meeting which placed the contestees in nomination, it was determined that the voters should express no preference on that subject, but that the two who might receive the highest vote should serve for three years, the two next for two years and the two lowest for one year, in case they were elected; so the question was held in abeyance, to be determined by the election.

" Wm. H. Allen, who presided over that meeting, was called

as a witness and testified as follows: 'About 130 to 150 were present. . . . . When we came to the nomination of school directors I said there are two to be elected for three years, two for two years and two for one year. We then had considerable discussion, or debate, as to how we should fix this thing. One or two members produced the school law, and discussed it for a number of minutes, and it was agreed that the two receiving the highest vote should be elected for a three years' term, and the next two receiving the next highest number of votes should be the two year term men, and the two receiving the least number of votes should be the one year term men. . . . . I don't think that there was a single man who voted that ticket that did not understand what the caucus agreed to.' It was not therefore an accidental omission in preparing the tickets, but they expressed all that the voters intended they should. Did they express enough? How could it be ascertained from them who should serve for the three years, who for two and who for one? We would much prefer to decide this question conformably to the evident wish of a majority of the voters who participated in the election, and permit the contestees to serve as school directors. But there is no authority of law, known to us, by which their respective terms could be settled and determined. It is not a matter which could be left for adjustment amongst themselves. The majority portion of the voters of the school district could not delegate such authority to them, if it was so intended. After the election the voters had no control over the matter; neither had the court; we could only give effect to that which was expressed, or intended to be expressed on the ballots. A voter's intention is to be inferred from a reasonable construction of his acts, and is not to be ascertained by evidence of his mental purposes in depositing his ballot, or his notions of the legal effect of what it contained or omitted: People v. Saxton, 22 N. Y. 309; s. c. 78 Am. Dec. 191.

"While we might look into the action of a nominating caucus to learn who was in fact the nominee or candidate for an office, if his name was imperfectly written or printed upon the ticket, we could not resort to its proceedings for information to supplement a ticket as to a matter on which it was wholly silent. It would introduce into the case a rule of practice

which is an entire stranger to the law of election contests. When several persons are to be elected to the same office but for different terms the tickets must designate the term for which each is voted for: Sadsbury Twp. Election, 6 L. Bar. 42; Wier's Case, 34 Leg. Int. 214; 6 A. & E. Enc. Law, tit. Elections, 315; Milligan's Ap., 96 Pa. 222; Gilliland's Case, 96 Pa. 224.

" In Milligan's Ap., he and Miller were candidates for councilmen in Philadelphia. The court below said : ' The evidence before us shows that there were cast for the said Samuel P. Milligan for the term commencing on the first Monday of April, 1877, 1170 votes ; for the term commencing April, 1877, 164 votes; without designating any term, 238 votes ; for Samuel Miller, for the term commencing April, 1877, 1574 votes. If we discount the 238 votes cast for Milligan without designating for which of said terms they were cast, Miller has undoubtedly been elected. . . . How can we ascertain for which term they were cast, in the absence of designation or proof? It assuredly will not do for us to guess. The voter should so express his intention as to leave no doubt, where two persons are elected at the same time to like offices, but for different terms, for which term he casts his ballot. The omission is his, and he should not complain if from the impossibility of ascertaining his intention, his ballot is rejected.'

" The Supreme Court, on appeal, held that there was no error in this ruling, stating that ' the action of the court in rejecting the votes cast for Milligan for the office without designation of the term, we think was clearly right,' and affirmed the judgment of the court below.

" Gilliland's case arose upon an election of school directors in Allegheny county at which he and one Adam Ammon were candidates. Four directors were to be chosen, namely, two for three years, one for two years and one for one year. The tickets which were voted generally indicated the term, but some did not, and while Ammon had the larger number of votes, yet, if those which failed to name the term were deducted from each candidate, Gilliland had more than Ammon. The court held that they should be counted and upon that theory declared Ammon elected; but the Supreme Court, on appeal, reversed the decree and seated Gilliland, upon the

ground that the ballots without designation of term should have been excluded, and also held that the 2d section of the act of April 11, 1862, had no application to the case. The Supreme Court in the latter case say 'those tickets were undoubtedly intended to be voted for him (Ammon) as school director,' but they stopped there. The electors voting them did not designate any specific term. For the court to determine the length of term intended by the persons casting these votes, would be based on mere conjecture. . . . The intention of the voter, as a general rule, must be expressed by his written or printed ballot. It is true some inaccuracies in the name of a candidate, or in the manner of spelling it, may be proved by parol to give effect to the intention of the elector. That is not this case. Here the attempt is by mere inference to create a term which the voter did not attempt to declare. When the officers for the same office are to be chosen for different terms the ballot must specify the term for which each person is voted for, unless the case comes under the act of April 11, 1862.

" The act of April 11, 1862, applies only when the 'voters shall neglect to designate on their tickets the term of office for which each person voted for is a candidate.' In the case now under consideration they did not all so neglect to designate the term, and the rule furnished by the act in such cases, giving the longest term to the candidate having the highest vote, does not apply. We see nothing in reasons assigned in the motion to quash which would warrant us in entertaining it. We therefore make the following order :

"And now, Aug. 24, 1892, after hearing the parties, their proofs and allegations, and arguments of counsel, and after full consideration thereof, it is adjudged and decreed that Kennedy Price and Wm. Rupp were duly elected school directors for the term of three years at the election held on the 16th day of February, 1892, in the school district of the borough of Meyersdale, and A. F. John and John W. Young were elected school directors at said election for the term of two years, and J. F. Anthony and Henry J. Ebbecka were duly elected school directors at said election for the term of one year, instead of the contestees, S. C. Hartley, Wm. Appel, Geo. W. Collins, S. S. Good, W. H. Habel and B. D. Morgan ; the cost of this proceeding to be paid by the school district."

*Errors assigned* were (1) in refusing to quash the petition; (2) in decreeing as above; and (3) in not confirming or setting aside said election.

*F. J. Kooser, W. J. Baer* with him, for appellants.—It seems clear that, in the light of the facts and statute, the ballots cast without designating the term were not illegal ballots, but at most irregular. Had the statute declared that such ballots should be rejected, they would be illegal—but the statute does not say so.

The act of 1862 warrants the reading of " all " as " most : " Boilleau's Case, 2 Parsons, 505 : Kieffer v. Ehler, 18 Pa. 388.

*A. H. Coffroth, W. H. Ruppel* and *W. H. Koontz* with him, for appellee, cited Burkholder v. Stahl, 58 Pa. 375 ; Wolverton's Case, 1 Walker, 48 ; Election Cases, 65 Pa. 36 ; Miller v. Milligan, 34 Leg. Int. 159; Milligan's Ap., 96 Pa. 222 ; Gilleland's Case, 96 Pa. 224; Election of School Directors in the Nineteenth Ward, 11 Phila. 300.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1893 :

At the election out of which this contest grows there were six school directors to be chosen, two for three years, two for two years, and two for one year. A majority of the electors failed to designate the term on their ballots, and the election officers certified that the six persons having the highest number of all the votes cast were duly chosen. Their certificate shows on its face that the six persons having a minority of all the votes cast had a majority of all the votes on which the term was designated, and the material question is whether their conclusion was warranted by the facts to which they certified. The learned court below thought it was not, and applying to these facts the principle settled in Milligan's Appeal, 96 Pa. 222, and Gilleland's Appeal, Ibid. 224, rejected the votes on which there was no designation of the term, and adjudged that the persons having the highest number of votes for the respective terms were elected for such terms. It is now contended that the cases cited do not govern this case, because the agreement at the party caucus affords a means which was not present in them, of discovering the intention of the voters. It appears by the testimony of parties present at this caucus that it was determined there that the persons receiving the highest number of all the votes cast at the election should

have the three years term, the persons receiving the next highest number should have the two years term and the persons receiving the next highest number should have the one year term. But it was not within the province of the caucus to declare what ballots should be counted or to whom certificates of election should be issued. These duties belonged in the first instance to the election officers and were to be discharged by them in conformity with the election laws. The caucus decree to which we are invited to look for the intention of the voter who did not designate the term on his ballot is not a safe guide to it. It is at most a declaration by a majority of the members of the caucus, in conflict with the election laws and the decisions on the subject to which it relates. There is certainly nothing in it which indicates for what term any ballot was cast, or throws any light on the intention of the elector in respect to the term. We conclude therefore that the action of the caucus affords no ground for a departure from former adjudications which reject the ballots on which the term is not designated.

The effort to find support for the action of the election officers in the second section of the act of April 11, 1862, P. L. 471, is equally unsuccessful because the act is operative only when the " voters shall all neglect to designate on their tickets the term of office for which each person voted for is a candidate " and it is expressly decided in Gilleland's Appeal, supra, that it is not applicable to a case like the present.

The legality of the election for school directors is not contested and the controlling facts on which the issue between the litigants must be determined are undisputed. These facts appear with sufficient precision and certainty in the petition and the motion to quash it was properly denied. The application of a well settled principle to the vote as returned by the election officers in their certificate shows that their conclusion as to the legal effect of this vote was erroneous and that the persons named in the decree of the court below were duly elected school directors for the respective terms mentioned therein. This decree is fully vindicated in a clear and satisfactory opinion by the learned president judge. The specifications of error are overruled.

Decree affirmed and appeal dismissed at the cost of the appellants.